### EX PARTE FRANK T. BATES.

*No. 3384. Decided October 18.*

**Habeas Corpus for Bail—Fact Case.**—See the statement of the case for evidence adduced on a habeas corpus proceeding for bail—murder being the offense charged—which, falling short of "proof evident" of a capital offense, is held insufficient to support a judgment refusing bail.

HABEAS CORPUS on appeal from the District Court of Harris. Tried below before Hon. James Masterson.

This was a proceeding by *habeas corpus* for bail, the charge against the relator being the murder of A. E. Frazier, in Houston, Harris County, on the 2d day of August, 1890. The order of the judge below remanding the relator without bail is reversed, and he is awarded bail in the sum of $5000. The testimony will be summarized in the order in which it appears in the record.

Charles Mack testified for the State, in substance, that he witnessed the shooting of Frazier by the relator. It occurred between 2 and 3 o'clock on the morning of August 2, 1890, at or about the corner of Austin and Preston streets, in the city of Houston, Harris County, Texas. The witness and James O'Connor, en route to their homes, stopped at Smith's saloon, on the corner of Austin and Preston streets, to take a drink. There was a gallery or veranda at the front of that saloon. A few minutes after witness and O'Connor reached the saloon, and while they were yet on the gallery, the relator, Frazier, and a negro came up. Frazier stopped on the gallery to speak to witness and O'Connor and the relator went into the saloon. Frazier then said something about the relator having a gun (pistol), left witness and O'Connor, and went into the

saloon where the relator was. A moment or two later the witness, look-
ing into the saloon, saw the relator pointing a pistol at Frazier. Frazier
said to relator: "If you don't put up that gun I will take it away from
you and hock it." The relator put his pistol away, left the saloon, and
walked down Austin Street, cursing and swearing at witness, O'Connor,
and Frazier, who had joined witness and O'Connor on the gallery. After
walking twenty or thirty steps down Austin Street the relator turned and
came back to the saloon, entered it, and called for beer. Frazier said
something to O'Connor which the witness did not hear, and O'Connor
replied, "Well, I have a quarter, and we can drink too." Witness,
O'Connor, and Frazier then went into the saloon and ordered drinks,
when the relator, who had been standing at the other end of the bar
counter, turned upon the party, drew and flourished his pistol, and said
to them, "What sort of a game are you putting up on me?" He then
backed out of the saloon with his pistol in his hand and walked off down
Preston Street. Witness, O'Connor, and Frazier then returned to the
gallery and sat down. About the same time the relator came back towards
the saloon as far as the corner, whence he cursed the party violently, call-
ing them all the vile names he could think of. Among other things he
said, "Come here, you sons-of-b—s, and I will shoot a hole through
you forty yards." Frazier remarked, "I am going over there," starting
at once, followed by O'Connor, who in turn was followed by the barkeeper.
The witness went to the end of the gallery to observe what might trans-
pire. When Frazier, O'Connor, and the barkeeper started across the
street toward the relator, he, the relator, walking sideways, and watching
the three men, started down Preston Street toward Main Street. Frazier
called to the relator, "Come here; I want to see you." The relator then
turned full upon the party and fired. Instantly he fired the second shot,
when Frazier reeled and fell backwards into O'Connor's arms. Relator
then fired the third shot, and then turned and fled down Preston Street
toward town.

The relator and Frazier appeared to be upon perfectly familiar terms
when they came to the saloon together, Frazier perfectly sober, but the
relator pretty drunk, but not staggering. The first time the relator drew
his pistol he drew it on Frazier, and nobody else that witness could see.
Witness and O'Connor were then on the gallery, and witness could not
say why the pistol was drawn on Frazier. The pistol was next drawn by
the relator after he had left and returned to the saloon, and was drawn
on witness, O'Connor, and Frazier. The witness at no time saw Frazier
seize a soda bottle. Neither the witness, O'Connor, nor Frazier said a
word to the relator, nor did they or either of them do anything to provoke
the relator when he drew the pistol the last time.

The cross-examination of this witness amounted to little more than a
reiteration of his testimony in chief. He stated, however, that when the

relator left the saloon the last time, the barkeeper, speaking to witness, O'Connor, and Frazier, said, "If that man comes in here again I will knock him down, and you take his pistol away from him." The purpose of the three men in going toward the relator the witness inferred to be to take the relator's pistol from him, by force if necessary. James H. O'Connor testified substantially as did the witness Mack, adding that when he went toward the relator at the time of the shooting there was no agreement or understanding between him, Frazier, and the barkeeper that they would knock the relator down and disarm him.

Louis Gruntz, the barkeeper in charge of Smith's saloon at the time of the shooting, was the next witness for the State. He testified substantially as did the witnesses Mack and O'Connor as to what transpired at the very time of the killing, but different in several respects as to what transpired immediately before. According to his testimony the relator was in Smith's saloon but once on the night or morning of the shooting—the time first referred to by the witnesses Mack and O'Connor. Immediately upon Frazier's coming into the saloon thereafter the relator threw his pistol into Frazier's face and threatened to kill him. Frazier thereupon became angry, seized an empty soda bottle, and said to the relator, "Do you mean it?" The relator thereupon left the saloon and went down the street. Frazier, followed by witness, then went to the gallery where Mack and O'Conner were. Relator soon came back to the corner, with his pistol in his hand, and cursed the crowd violently. Frazier said, "Let's go over and take the pistol away from him to keep him out of trouble," and started toward the relator, followed by O'Connor and witness. When he reached the center of the street Frazier called to the relator, "Hold on, partner, I want to see you." The relator then began to shoot. The witness followed Frazier and O'Connor toward the relator, to keep down trouble if he could. He had no intention of helping to knock the relator down in order to get his pistol, nor did he at any time propose such a proceeding, though when the relator left the saloon, he, witness, remarked, that if the relator came back into the saloon he would take the pistol from him. The relator was under the influence of liquor at the time of the shooting, but could walk straight.

Nine or ten witnesses for the relator testified that they saw the relator at different times on the fatal night, both before and after the shooting, and that throughout that night he was very much under the influence of liquor. Several of the said witnesses stated that in their opinion the relator was "crazy drunk"—so drunk that he could not possibly know what he did and said. Others stated that though they knew him to be very drunk they could express no opinion as to the condition of his reasoning powers. It was further shown that the relator, upon whom intoxicants had an extraordinary effect, had been on a protracted drunk at the time of the homicide.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—The relator having been arrested for the murder of one A. E. Frazier, applied to the Hon. James Masterson, judge of the Eleventh Judicial District, for bail under a writ of *habeas corpus.* The writ was granted, but upon a hearing of the same bail was refused, and applicant remanded to custody. From the judgment refusing him bail he has prosecuted this appeal.

We have maturely considered the evidence as presented in the record, in connection with the able argument of counsel, and our conclusion is that upon the facts appellant is entitled to bail. It is not the practice in this court in granting bail to discuss the facts of the case.

The judgment refusing appellant bail is reversed; and upon his entering into a bond for his appearance to answer an indictment for the murder of said Frazier, in the sum of $5000, with good and sufficient sureties, conditioned as the law directs, the sheriff of Harris County will release him from custody under the *mittimus* by which he holds him issued by the examining court.

Judgment reversed and appellant admitted to bail in the sum of $5000.

*Ordered accordingly.*

Judges all present and concurring.